IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BAARI'A (OF THE FAMILY)          )
MUHAMMAD, a/k/a Lumin            )
Lucky Lander,                    )
                                 )
              Plaintiff,         )
                                 )
     v.                          )          1:25CV972
                                 )
STATE EMPLOYEES CREDIT UNION,    )
et al.,                          )
                                 )
              Defendants.        )


## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned Magistrate Judge on a Motion for Leave to File Documents Electronically (Docket Entry 5). (See Docket Entry dated Oct. 30, 2025 (referring the instant Motion to the undersigned Magistrate Judge).)  Because the Court lacks subject matter jurisdiction over this frivolous action, the Court should terminate the instant Motion, should dismiss this action, and should warn Plaintiff that the filing of any further frivolous documents shall result in the imposition of sanctions (including monetary sanctions and a pre-filing injunction).

## INTRODUCTION

Plaintiff commenced this action by filing a pro se "Verified Complaint" (Docket Entry 1 at 1; see also id. at 3 ("request[ing] the indulgence of this [C]ourt as [Plaintiff] is not schooled in

law"), 206-07 (setting out verification block with Plaintiff's signature)),[1] further described therein as a:

---

[1] Quotations from Plaintiff's filings utilize standard capitalization conventions and omit bold font. Plaintiff signed the Verified Complaint in both names listed in the caption. (See Docket Entry 1 at 207.) In addition to using two names, Plaintiff also referred to herself in two capacities throughout the Verified Complaint, i.e., as both "claimant" and "Plaintiff." (E.g., id. at 3-9, 12-27, 40-46, 85-109, 115-21, 127-33, 135-42, 145-91, 198-201.) As the Verified Complaint explains it:

> claimant is the sole beneficiary of Lumin Lucky Lander, hereinafter Plaintiff, which is the public vessel in commerce . . . unlawfully created by the de facto United States government when its agents stole claimants [sic] given trade name and created a stock security called a birth/berth certificate displaying th[e] name [Baaria Muhammad] in all capital letters . . . thereby creating a 'federal citizen' ie. Fourteenth (14) Amendment citizen on paper in order to fraudulently pledge claimants [sic] labor as collateral for the corporation known as United States of America . . . .

(Docket Entry 1 at 3 (internal quotation marks omitted).) Those notions appear to rest on a mishmash of ideas a neighboring court has called "equal parts revisionist legal history and conspiracy theory," Byrant v. Washington Mut. Bank, 524 F. Supp. 2d 753, 758 (W.D. Va. 2007), aff'd, 282 F. App'x 260 (4th Cir. 2008). See id. at 758-59 (describing frivolous construct that Fourteenth Amendment created optional United States citizenship and that federal government "tricked the populace into becoming U.S. citizens by entering into 'contracts' embodied in such documents as birth certificates," through which "an individual unwittingly creates a fictitious entity . . . that represents, but is separate from, the real person," the labor and property of which the federal government misappropriates "as security for the national debt," unless individuals employ remedies involving use of "the Uniform Commercial Code ('UCC')" to redeem their worth); see also, e.g., McCullough v. United States, No. 3:11CV176, 2011 WL 3652332, at *2 (E.D. Va. Aug. 18, 2011) (unpublished) (discussing same concepts, denominated as "redemptionist theory," and noting that "[a]rguments based on this and other similar theories have been rejected by courts as being frivolous and a waste of judicial resources" (internal quotation marks omitted)). This Recommendation ignores any supposed Claimant/Plaintiff distinction.

Complaint in the common law also within the admiralty for torts, common law fraud and fraudulent misrepresentation and conealment [sic], damages, wrongful foreclosure, negligence and willful misconduct, misappropriation of funds, breach of contract, tortious interference with contracts and prospective advantage, conversion, civil conspiracy, breach of fiduciary duty, constructive fraud, equitable accounting, unjust enrichment, declaratory, equitable, and injunctive relief and equitable enforcement parties, tortious interference with trust relationship, violation of notice and due process rights, common law trademark infringement, defamation of character, slander of title, violations of TILA, RESPA, FDCPA, FCRA, tax fraud, [and] inland piracy[.]

(Id. at 1.) The Verified Complaint spans 214 pages (see id. at 1-214), with 23 attachments spanning an additional 510 pages (see Docket Entry 1-1 through Docket Entry 1-23).

It describes Plaintiff as:

a natural wombman . . ., a living sentient human being in propria persona (in common law); nonpersonam (in admiralty maritime), sui juris, as the non-combative, non-adversarial claimant, peacefully engaged in international trade, . . . a foreign body ie. a foreign state, whom has no ties to any government, does not have a social security number, never exercising public rights of any kind, only exercising the unalienable rights bestowed by the almighty creator goddess/god, a wombman of many religious and spiritual beliefs which is an unalienable right, existing at all times in all spaces as a pre-Columbian sovereign moor aboriginal free inhabitant sojourner on the land and soil of the non-statutory Florida Republic, a non-resident alien, non-person non-citizen non-statutory common law Floridian republic national . . ., explicitly not the federalized statutory corporate State of Florida, appearing generally under sole jurisdiction of the common law, the Treaty of Marrakesh 1786, the Treaty of Peace and Friendship, and the American Constitution, without waiving any rights[,] remedies or defenses, not within admiralty wherein all court officials must take judicial notice that [Plaintiff] appears specially on paper and never generally in the admiralty, before this [C]ourt seeking a remedy under the common law in equity standing in the

-3-

> unlimited commercial liability and unlimited right to
> contract as a secured party and creditor and no evidence
> exists to the contrary.

(Docket Entry 1 at 2-3 (proper spacing added) (internal brackets,
some bracketed material, footnotes, and italics omitted).)

The caption of the Verified Complaint lists as Defendants
State Employees Credit Union (along with its Chief Financial
Officer), a title company, two law firms (and two attorneys
therefrom), a Clerk and an Assistant Clerk of Superior Court, a
United States District Judge of this Court ("Defendant Judge"), the
State of North Carolina, its Attorney General, and its Secretary of
State.  (See id. at 1; accord id. at 27-29 (describing
Defendants).)  According to the Verified Complaint, Plaintiff
"brings [her] claims for injuries suffered . . . [when Plaintiff
previously] filed . . . case number 23 CV 1076 prior to foreclosure
of . . . Plaintiff['s] property in Alamance County . . . and
[Defendant] Judge [] dismissed the complaint without prejudice
. . . ."  (Id. at 14 (referring to Compl., Muhammad v. Spivey, No.
1:23CV1076, Docket Entry 1 (M.D.N.C. Dec. 8, 2023), Muhammad v.
Spivey, No. 1:23CV1076, Docket Entry 8 (M.D.N.C. Dec. 28, 2023)
(dismissing Docket Entry 1 for failure to state a claim with leave
to file amended complaint), Amended Compl., Muhammad v. Spivey, No.
1:23CV1076, Docket Entry 10 (M.D.N.C. Jan. 17, 2024), Supp. to
Amended Compl., Muhammad v. Spivey, No. 1:23CV1076, Docket Entry 11
(M.D.N.C. Jan. 17, 2024), and Muhammad v. Spivey, No. 1:23CV1076,

-4-

Docket Entry 17 (M.D.N.C. Feb. 9, 2024) (dismissing Docket Entries 10 and 11 without prejudice for lack of subject matter jurisdiction).) The Verified Complaint further alleges that "[s]aid determination was made absent jurisdiction and authority" (id.), and that, due to the dismissal of Plaintiff's prior action, the "subject property was unjustly sold in a quick sale under duress, in violation of [Plaintiff's] inalienable rights" (id.).

The order dismissing Plaintiff's original pleading in that prior case contains these observations:

1) that pleading "is largely incomprehensible," Muhammad, No. 1:23CV1076, Docket Entry 8, at 1;

2) "[n]onsensical assertions appear early and throughout th[at pleading]," id.;

3) "[P]laintiff appears to say that she borrowed money from the State Employees Credit Union and that [it] now refuses to accept her efforts to 'validate the debt,'" id. at 2;

4) that pleading "makes various unclear and confusing allegations about a foreclosure," id., including references to "'admiralty jurisdiction,'" id., and "'inland piracy,'" id.;

5) "an attachment to th[at pleading] . . . makes similar incomprehensible claims and allegations," id., invoking, among other things, Plaintiff's "'[i]ndigenous [r]ights,'" id. at 3; see also id. at 4 (describing "exhibits" as "equally nonsensical");

-5-

6) "[a]lthough th[at pleading] reference[s] some recognizable provisions of law, [it] do[es] not give any understandable basis for any discernible legal claim," id. at 3; see also id. at 7 ("The Court does not discern any viable cause of action from [Plaintiff's] allegations . . . .");

7) that pleading "names [as defendants] a state clerk of court and an assistant clerk of court . . . with no comprehensible facts," id. at 3, and despite legal authority establishing that "clerks of court in North Carolina are generally entitled to immunity for their quasi-judicial conduct," id.;

8) that pleading "conflates and confuses claims under the heading 'fraud, constructive fraud, breach of fiduciary duty, misappropriation of funds, securities fraud, tax fraud, fraud in the inducement, fraudulent concealment, theft of public funds, lack of standing to foreclose," id.; see also id. at 4 ("Many of [Plaintiff's] claims . . . appear to be efforts to set aside state judicial action based on ridiculous theories.");

9) Plaintiff's "long recitations of her understanding of the law are not grounded in reality," id. at 4; and

10) in sum, that pleading "is abusive of the system and a waste of court resources," id. at 7.

In light of those observations, Defendant Judge concluded that "[t]his Court ha[d] inherent authority to dismiss the [original] complaint [in that case] sua sponte because of its patent frivolity

-6-

. . . ." Id. at 8 (italics omitted). Yet, Defendant Judge gave Plaintiff a chance to file an amended pleading "cur[ing the noted defects by] limit[ing] herself to a coherent recitation of the facts, avoid[ing] shotgun pleadings, and provid[ing] a clear and concise delineation of what facts support which causes of action against which specific defendant." Id. at 7; see also id. at 8 ("authoriz[ing ] fil[ing of] an amended complaint that complies with the requirements of [Federal] Rule [of Civil Procedure] 8(a) and that states a claim on which relief may be granted").

Plaintiff later made filings that Defendant Judge construed as an amended complaint, see Muhammad, No. 1:23CV1076, Docket Entry 17, at 1, but Defendant Judge ruled that "the Court lack[ed] subject matter jurisdiction over the claims asserted in the amended complaint," id., and, "[e]ven if jurisdiction did exist, dismissal [wa]s appropriate because the amended complaint d[id] not comply with [Federal] Rule [of Civil Procedure] 8(a)," id. In so doing, Defendant Judge noted that the "amended complaint d[id] not cure the[ original pleading's] defects," id. at 3, and "did not address the [pleading] issues identified in the earlier court order," id. As a result, "[t]he Court still c[ould ]not discern any viable cause of action from [Plaintiff's] mixed and incomprehensible claims and allegations," id. at 4, and "[t]he amended complaint

-7-

[wa]s dismissed without prejudice for lack of subject matter jurisdiction," id. (all-caps and bold font omitted).[2]

Like the frivolous pleadings in the prior case dismissed by Defendant Judge, the Verified Complaint once again seeks to impose liability on State Employees Credit Union for "[d]ishonor[ing ] a valid and properly executed international bill of exchange tendered by [Plaintiff] to settle and discharge the alleged debt . . . and instead knowingly forc[ing] . . . Plaintiff into foreclosure in bad faith, constituting wrongful foreclosure and bad faith dealing[.]" (Docket Entry 1 at 17 (internal parenthetical omitted); see also id. at 16 ("This is an action for declaratory, injunctive, and equitable relief and for monetary damages arising from a pattern of unlawful, deceptive, and abusive practices committed by Defendant[] State Employees[] Credit Union, in connection with the servicing and purported enforcement of a mortgage loan secured by [Plaintiff's] real property sold under duress in a short sale."), 57 ("alleg[ing] that the subject mortgage transaction in this instant action [and] the subject foreclosure action was, from its inception, a fraud, which vitiates everything" (internal footnote omitted)).) And – once more like the prior case dismissed by Defendant Judge – the Verified Complaint attempts to sue "Clerks of Court . . . [for] attaching to the fraud of Defendant State

_____

[2] Plaintiff did not appeal that ruling. See Docket, Muhammad v. Spivey, No. 1:23CV1076 (M.D.N.C.) (showing no notice of appeal).

-8-

Employees[] Credit Union, [there]by violating [Plaintiff's] inalienable rights and [] constitutional rights . . . ." Id. at 19 (internal brackets omitted); see also id. at 20 ("The clerks of court, Attorney General, and Secretary of State . . . acted ultra vires and in breach of statute-staple security instrument, operating as vessels in commerce under admiralty and maritime principles, thereby incurring personal liability . . . ."), 21-22 (alleging that Defendant law firms and Defendant attorneys engaged in "unauthorized and unethical diversion of real estate sale proceeds" for the benefit of Defendant title company), 128-87 (asserting 43 causes of action).)

As to Defendant Judge, the Verified Complaint concedes that she "dismiss[ed] the [prior case] with valid reasons, particularly unconcise [sic] claims for relief" (id. at 118-19 (internal quotation marks omitted)), but nonetheless contends that she "lacked jurisdiction to adjudicate the matter, which lead[s] to this current action" (id. at 119; see also id. at 121 (asserting that Defendant Judge "infringe[d] on [Plaintiff's] inalienable rights bestowed only by goddess/god, the creator of all, and Plaintiffs [sic] constitutional protections under the 13th Amendment"), 122 ("Defendant [Judge] thereby committed a tortious act akin to conversion or false imprisonment of [Plaintiff's] lawful identity as [Plaintiff] does not have a legal identity

-9-

. . . ."), 126 ("describ[ing Defendant Judge] as mentally and spiritually deranged with delusions of omnipotence")).

Plaintiff paid the applicable filing fee (see Receipt of Funds dated Oct. 24, 2025) and the Clerk issued summonses for Defendants (see Docket Entry 6).

<u>DISCUSSION</u>

Via the instant Motion, Plaintiff has requested "permission to file . . . documents in this matter electronically through the Court's Case Management/Electronic Case Filing ('CM/ECF') system . . . ." (Docket Entry 5 at 1.) However, "[t]he [C]ourt must determine whether it has subject matter jurisdiction over [this] action before proceeding any further." <u>Coley v. United States Postal Serv.</u>, No. 1:11CV986, 2013 WL 2474357, at *2 (M.D.N.C. June 10, 2013) (unpublished) (Schroeder, J.). In fact, "[a] federal court has an independent obligation to assess its subject-matter jurisdiction, and it will raise a lack of subject-matter jurisdiction on its own motion." <u>Constantine v. Rectors & Visitors of George Mason Univ.</u>, 411 F.3d 474, 480 (4th Cir. 2005) (internal quotation marks omitted)); <u>see also</u> <u>Brattain v. Stanly Cnty. Bd. of Educ.</u>, No. 1:19CV1037, 2020 WL 6364718, at *1 n.2 (M.D.N.C. Oct. 29, 2020) (unpublished) (Schroeder, C.J.) ("Of course, a court can sua sponte review subject matter jurisdiction." (italics omitted)).

On its face, the Verified Complaint invokes both diversity-of-citizenship and federal-question jurisdiction (see Docket Entry 1

-10-

at 29-32); nevertheless, "[o]ver the years th[e United States Supreme] Court has repeatedly held that the federal courts are without power to entertain claims otherwise within their jurisdiction if they are so attenuated and unsubstantial as to be absolutely devoid of merit, wholly insubstantial, obviously frivolous, plainly unsubstantial, or no longer open to discussion." Hagans v. Lavine, 415 U.S. 528, 536-37 (1974) (internal citations and quotation marks omitted). Put another way, "where a claim is obviously without merit, *Hagans* precludes a federal district court from exercising its jurisdiction." Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999); see also Davis v. Pak, 856 F.2d 648, 651 (4th Cir. 1988) ("*Hagans* stands for the proposition that federal courts are without jurisdiction to hear frivolous constitutional claims."); Marshall v. American Broad. Cos., No. 1:16CV550, 2017 WL 2774265, at *2 (M.D.N.C. June 26, 2017) (unpublished) (Schroeder, J.) ("As to federal question jurisdiction, the court does not lack authority to act simply because a claim lacks merit or is doubtful. But a claim is too insubstantial and frivolous to support federal question jurisdiction when it is obviously without merit." (internal brackets and quotation marks omitted)).

Similarly, apart from any statute requiring federal courts to dismiss a frivolous case sua sponte in certain contexts, see, e.g., 28 U.S.C. § 1915(e)(2)(B)(i), "there is little doubt they would have power to do so even in the absence of [such a] statutory

-11-

provision," <u>Mallard v. United States Dist. Ct. for the S. Dist. of Iowa</u>, 490 U.S. 296, 308 (1989); <u>see also</u> <u>Traywick v. Medical Univ. of S.C.</u>, 671 F. App'x 85, 86 (4th Cir. 2016) ("Because [the plaintiff] is neither a prisoner nor proceeding in forma pauperis in district court, the provisions of 28 U.S.C. §§ 1915(e)(2), 1915A (2012), permitting sua sponte dismissal of complaints that fail to state a claim, do not apply. A court has, however, inherent authority to dismiss frivolous complaints." (internal citation omitted)); <u>Ross v. Baron</u>, 493 F. App'x 405, 406 (4th Cir. 2012) ("[F]rivolous complaints are subject to dismissal pursuant to the inherent authority of the court . . . ."). "In addition, because [the C]ourt lacks subject matter jurisdiction over an obviously frivolous complaint, dismissal prior to service of process is permitted." <u>Ross</u>, 493 F. App'x at 406; <u>accord, e.g.</u>, <u>Ferguson v. Wooton</u>, 741 F. App'x 955, 955 (4th Cir. 2018); <u>Smith v. Kagan</u>, 616 F. App'x 90, 90 (4th Cir. 2015); <u>Yi v. Social Sec. Admin.</u>, 554 F. App'x 247, 248 (4th Cir. 2014).

Here, the Verified Complaint qualifies as frivolous on many fronts. For starters, as shown in the Introduction, the Verified Complaint attempts to re-litigate the same basic claims arising from Plaintiff's efforts to avoid payment of her mortgage loan (and from the ensuing consequences, i.e., foreclosure) that the Court (per Defendant Judge) deemed frivolous in dismissing Plaintiff's prior case. "Therefore, in the interests of judicial economy and

efficiency and because the present action is a meritless duplicate of [a] prior lawsuit[] filed by Plaintiff, the present case is frivolous and subject to summary dismissal." <u>Addison v. Schwacke</u>, No. 2:25CV12512, 2025 WL 2917980, at *7 (D.S.C. Sept. 12, 2025) (unpublished), <u>recommendation adopted</u>, 2025 WL 2778359 (D.S.C. Sept. 30, 2025) (unpublished); <u>see also, e.g.</u>, <u>Traywick</u>, 671 F. App'x at 85-86 ("In the complaint, [the plaintiff] sought to relitigate . . . essentially the same claims he raised in a prior action, which the district court denied . . . . We find that the district court properly used its inherent authority to dismiss [the plaintiff's] complaint as frivolous and duplicative."); <u>Lunsford v. Jacob</u>, No. 5:23CT3176, 2023 WL 6464129, at *2 (E.D.N.C. Oct. 2, 2023) (unpublished) ("Several of [the plaintiff's] allegations are frivolous because they duplicate a prior action he filed in this court."), <u>aff'd</u>, No. 23-7075, 2024 WL 809989 (4th Cir. Feb. 27, 2024) (unpublished); <u>Ranzy v. Law Firm Crumley Roberts LLP</u>, No. 3:20CV477, 2020 WL 6281407, at *2 (W.D.N.C. Sept. 25, 2020) (unpublished) ("[The p]laintiff's [c]omplaint is duplicative of previous actions filed by [the p]laintiff in this [c]ourt which have been dismissed as frivolous and for failure to state a claim upon which relief may be granted. [The p]laintiff's re-filing of the same [c]omplaint against the same [d]efendant is wholly wasteful of judicial resources."), <u>aff'd</u>, No. 20-2147, 2021 WL 5357489 (4th Cir. Nov. 17, 2021) (unpublished).

-13-

Additionally, in retreading the same ground as the prior action, the Verified Complaint remains (like its predecessor pleadings) "largely incomprehensible," Muhammad, No. 1:23CV1076, Docket Entry 8, at 1. These well-chosen words from a now-retired Magistrate Judge of this Court about a similar (though far less lengthy) pleading apply with equal force to the Verified Complaint:

> [A] complaint should be a short and plain statement of the facts giving rise to the complaint which shows that [the] plaintiff is entitled to relief, and a statement of the relief which he [or she] seeks. Instead, [the] plaintiff's complaint is prolix, verbose, and majorly not understandable. It rambles for thirteen or fourteen pages with attachments, none of which informs the Court of the legal basis for the complaint. With respect to the factual basis, the verbosity and heaping of irrelevant details hides, rather than discloses, any basis for a complaint. This type of complaint conceals, rather than reveals, the facts necessary to understand it and which would enable a defendant to respond to it.
>
> The proper disposition of a complaint which is verbose, redundant, confusing, ambiguous, unintelligible, prolix, argumentative, etc., is to strike or dismiss it.

Spruill v. Duke Power Co., No. 1:06CV116, 2006 WL 755745, at *1 (M.D.N.C. Feb. 3, 2006) (unpublished) (Eliason, M.J.) (internal citations omitted), recommendation adopted, 2006 WL 771889 (M.D.N.C. Mar. 20, 2006) (unpublished) (Tilley, J.).

Indeed, "Plaintiff's [Verified C]omplaint is a meandering [214] page narrative that is neither 'short and plain,' Fed. R. Civ. P. 8(a)(2), nor 'simple, concise, and direct,' Fed. R. Civ. P. 8(d)(1)." Plumhoff v. Central Mortg. Co., 286 F. Supp. 3d 699, 703 (D. Md. 2017). Worse still, "the same general conspiracy and fraud

-14-

allegations are repeated countless times throughout the [Verified C]omplaint yet generally lack any comprehensible factual basis." Id. "[T]hese redundant allegations are then interspersed with fleeting and conclusory references to purported violations of numerous unrelated statutory and common laws." Id.

"Simply put, the [Verified C]omplaint is way too long . . . and verbose for either the Court or [ D]efendants to sort out the nature of the claims or evaluate whether the claims are actually supported by any comprehensible factual basis." Id. at 704 (internal quotation marks omitted). In line with rulings from judges of this Court and others, the Court thus should dismiss this action. See, e.g., Brewington v. Daniel, No. 8:25CV1968, 2025 WL 1886364, at *4-5 (D.S.C. June 10, 2025) (unpublished) (recommending dismissal of "verbose, rambling [c]omplaint" and cogently observing that such pleadings "simultaneously say[] too much and too little"), recommendation adopted, 2025 WL 1884154 (D.S.C. July 8, 2025) (unpublished); Long v. New River Valley Cmty. Servs. Pact Program, No. 7:19CV171, 2019 WL 758608, at *1 (W.D. Va. Feb. 20, 2019) (unpublished) ("Although pro se litigants are held to less stringent standards than attorneys, they must nonetheless state their claims in an understandable and efficient manner. The court is not obliged to ferret through a complaint, searching for viable claims. Instead, the court may dismiss a complaint that is so confused, ambiguous, vague or otherwise unintelligible that its

-15-

true substance, if any, is well disguised." (internal brackets, citations, quotation marks, and underscoring omitted)); Robinette v. Duke Univ., No. 1:11CV536, 2011 WL 5530004, at *2 (M.D.N.C. Nov. 14, 2011) (unpublished) (Sharp, M.J.) ("The complaint is comprised of 224 pages . . . . Complaints far less over-long and burdensome . . . are routinely struck by the federal courts.").

Next, just as Defendant Judge found that, in Plaintiff's prior case, "[n]onsensical assertions appear early and throughout the complaint," Muhammad, No. 1:23CV1076, Docket Entry 8, at 1, the Verified Complaint repeatedly relies on gibberish, such as:

1) its description of Plaintiff as a "sovereign moor" (Docket Entry 1 at 2; see also, e.g., id. at 50 (maintaining that "Plaintiff [is] foreign to the jurisdiction of the de facto United States . . . [and] therefore immune from the jurisdiction of the [foreclosure] proceeding held at the Alamance County Court"), 123 ("declar[ing] that [Plaintiff] is exempt from all municipal duty and service under the Treaty of Marrakesh"));

2) its invocation of the laws of "admiralty" (id. at 1-2; see also, e.g., id. at 26 ("Plaintiffs [sic] action is a contract under the common law within the admiralty . . . ."), 31 (citing "laws [that] validate [Plaintiff's] action . . . within the admiralty jurisdiction"), 164 ("Defendant [court clerks'] actions in the 'special proceeding' . . . are governed under federal maritime and supplemental rules . . . ."));

-16-

3) its references to Plaintiff "as a secured party and creditor" (id. at 3; see also, e.g., id. at 7 (alleging that Plaintiff used "affidavits filed for public record with the Alamance County Recorder and on UCC 3 lien documents" to achieve special status), 56-57 ("[I]n her private capacity as secured party and creditor, [Plaintiff] did mail . . . IRS form 1099-A to the IRS . . . for settlement and closure of . . . [the] foreclosure case . . . . The 1099-A is a coupon that offsets the total purported sum 'owed' on the mortgage loan transaction . . . ."));

4) its contention that the "United States government . . . created a stock security called a birth/berth certificate displaying [Plaintiff's] name in all capital letters . . . thereby creating a . . . Fourteenth (14) Amendment citizen on paper in order to fraudulently pledge [her] labor as collateral" (id. at 3; see also, e.g., id. at 6-7 (discussing Plaintiff's "fil[ing of] a commercial lien at the Florida Secretary of State UCC office as primary beneficial interest of [her] birth certificate")); and

5) its espousal of the theory that Plaintiff validly tendered "an International Bill of Exchange ('IBOE') . . . for lawful settlement and closure of [her] alleged mortgage account" (id. at 43; see also, e.g., id. at 130 ("By ignoring a duly issued IBOE with proper form and capacity, Defendant [State Employees Credit Union and its CFO] breached international obligations . . . under the Geneva Convention.")).

-17-

All those aspects of the Verified Complaint make it frivolous.
See, e.g., United States v. Benabe, 654 F.3d 753, 767 (7th Cir.
2011) ("Regardless of an individual's claimed status of descent, be
it as a sovereign citizen, a secured-party creditor, or a flesh-
and-blood human being, that person is not beyond the jurisdiction
of the courts. These theories should be rejected summarily,
however they are presented." (internal quotation marks omitted));
Harrison v. Demory, No. 9:24CV4927, 2024 WL 5320390, at *4 (D.S.C.
Dec. 23, 2024) (unpublished) ("[C]laims that are based on
'sovereign-citizen' type theories . . . are frivolous. So-called
sovereign citizens argue that, though they are born and reside in
the United States, they are their own sovereigns and are not United
States citizens. Examples of grounds claimed for this belief
include[] the UCC . . . and admiralty law . . . ." (internal
citations omitted)), recommendation adopted, 2025 WL 80514 (D.S.C.
Jan. 13, 2025); Swinton v. Walk, No. 24CV4496, 2024 WL 4394738, at
*3-4 (E.D. Pa. Oct. 3, 2024) (unpublished) ("[T]he documents that
[the plaintiff] sought to file in his foreclosure case . . . are
all predicated on sovereign-citizen style verbiage . . . unlikely
to bring a plaintiff relief in any court of law. This includes
positions such as . . . that financial obligations may be satisfied
by an 'International Bill of Exchange.'. . . Since the documents
that [the plaintiff] sought to record and file are based on
frivolous theories repeatedly rejected by courts nationwide, it

-18-

follows that his [related] claims are likewise frivolous."
(internal brackets, citations, footnote, italics, and quotation
marks omitted)); TePoel v. Obama, Civ. No. 15SC3038, 2015 WL
5009669, at *1-2 (D. Minn. Aug. 21, 2015) (unpublished) (adopting
recommendation of dismissal of action as "self-evidently frivolous"
as the plaintiff's "arguments that his name in capital letters
represents a different legal entity . . . [and] that his rights
were truncated through the creation of a birth certificate . . .
have been rejected as frivolous"); Re El v. York Cnty. Gen.
Sessions, No. CV410-253, 2010 WL 5624651, at *1 (S.D. Ga. Dec. 13,
2010) (unpublished) (highlighting "cit[ation to] imaginary . . .
'Treaty of Marrakesh'" in concluding that the plaintiff presented
"patently nonsensical pleading"), recommendation adopted as
modified sub nom., Re El v. Hall, 2011 WL 201815 (S.D. Ga. Jan. 18,
2011) (unpublished); El-Bey v. United States, No. 1:08CV151, 2009
WL 1019999, at *1 (M.D.N.C. Jan. 26, 2009) (unpublished)
(Schroeder, J.) (treating claims of "immun[ity] from application of
the laws of the United States" based on status as a "Moor" as
"utterly without merit" and collecting cases showing such "claims
are the most recent incarnation of a notorious organization of
scofflaws and ne'er-do-wells who attempt to benefit from the
protections of federal and state law while simultaneously
proclaiming their . . . total lack of responsibility under those
same laws" (internal quotation marks omitted)).

-19-

Lastly (as to the Verified Complaint's frivolity), in the face of Defendant Judge's prior ruling that Plaintiff could not sue Defendant court clerks due to their quasi-judicial immunity, see Muhammad, No. 1:23CV1076, Docket Entry 8, at 3, the Verified Complaint not only frivolously reasserts such claims (see, e.g., Docket Entry 1 at 19-21, 28, 85-107, 171-86, 198-99, 204-06), but also compounds that abuse of the court system by suing Defendant Judge for her rulings in the prior case (see, e.g., id. at 14, 28-29, 118-26, 203). As many courts have explained, "the absolute immunity of [ D]efendant [Judge] would justify the dismissal of a[ny such] claim as frivolous." Clark v. State of Ga. Pardons & Paroles Bd., 915 F.2d 636, 640 n.2 (11th Cir. 1990); see also, e.g., Hamilton v. Simpson, 38 F. App'x 255, 256 (6th Cir. 2002) ("The district court properly dismissed [the] complaint as frivolous because [its] claims lack an arguable or rational basis in law inasmuch as the [judge-]defendants are clearly entitled to immunity."); Clay v. Yates, 809 F. Supp. 417, 427 (E.D. Va. 1992) ("[The] claims against . . . [the j]udge[-defendant] fall squarely within the definition of legal frivolity . . . because it is clear that [he is] immune from suit." (internal quotation marks omitted)), aff'd, No. 93-6534, 36 F.3d 1091 (table), 1994 WL 520975 (4th Cir. Sept. 23, 1994) (unpublished).

That last point also leads to the conclusion that Plaintiff has become (in addition to a frivolous litigant) a vexatious

litigant, as "[m]aking judges defendants in a repetitive series of lawsuits whenever a judge rules against a litigant is also a tactic employed by many vexatious litigants," In re Martin-Trigona, 9 F.3d 226, 230 (2d Cir. 1993).  The Court thus should include with its order of dismissal of this action a warning to Plaintiff "that any future frivolous, harassing, or duplicative filings or lawsuits in this Court . . . or elsewhere may result in a show cause order as to why a court should not issue sanctions, including a pre-filing injunction." Jones v. Austin, No. 3:22CV118, 2024 WL 920051, at *5 (E.D. Va. Mar. 4, 2024) (unpublished); see also Mejia v. Wal-Mart, No. 1:14CV237, 2017 WL 11665595, at *2 (M.D.N.C. Feb. 10, 2017) (unpublished) (Schroeder, J.) (imposing pre-filing injunction).

CONCLUSION

The Court lacks subject matter jurisdiction over this patently frivolous action, now the second Plaintiff has filed in this Court.

**IT IS THEREFORE RECOMMENDED** that the Court (A) terminate the instant Motion (Docket Entry 5), (B) cancel the Summonses (Docket Entry 6), (C) dismiss this action for lack of subject matter jurisdiction (due to its frivolousness), and (D) warn Plaintiff that the filing of any further frivolous or vexatious documents will result in the imposition of sanctions, including monetary sanctions and a pre-filing injunction.

/s/ L. Patrick Auld<br>
**L. Patrick Auld**<br>
**United States Magistrate Judge**

November 6, 2025

-21-